EDWIN PRATHER, CABN 190536
PRATHER LAW OFFICES
245 Fifth Street, Suite 103
San Francisco, CA 94103
Telephone: (415) 881-7774
Email: edwin@pratherlawoffices.com

Attorneys for Defendant
LUIS QUIROS

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>LUIS QUIROS,<br><br>　　　　　Defendant. | Case No.:  21-CR-0327-YGR<br><br>**DEFENDANT LUIS QUIROS'S SENTENCING MEMORANDUM AND REQUEST FOR A DOWNWARD VARIANCE**<br><br>Judge: Hon. Yvonne Gonzalez Rogers<br>Date and Time: December 8, 2022, at 2:30 p.m. |

## I. INTRODUCTION

Defendant Luis Quirós stands before the Court having pled guilty to the sole count in the Indictment in this case: a violation of 21 U.S.C. §§846, 841(a)(1), and 841(b)(1)(c), conspiracy to distribute and possess with intent to distribute methamphetamine. For the reasons indicated herein, the Court should sentence Mr. Quiros to a 24-month split sentence with a period of custody of 12 months followed by a period of home detention for 12 months. The split sentence would be followed by a 3-year term of supervised release. Such a sentence is an appropriate resolution to this case to both punish Mr. Quiros for his actions in conjunction with an appropriate consideration of Mr. Quirós's personal circumstances and the factors set forth under 18 U.S.C. § 3553(a).

## II. RELEVANT FACTUAL SUMMARY

Mr. Quiros was born in Michoacan, Mexico and lived in Mexico until approximately 1988, when he moved to the United States. Mr. Quiros has lived continuously in the United States since that time. He is a Mexican citizen with no legal status in the United States.

In 1991, Mr. Quiros met Bertha Lopez, and the two fell in love and created a life together. Ms. Lopez is a United States citizen. Although they are not legally married, they regard each other as husband and wife, and have two adult children together, Giovanni and Ivan Coria.

As relevant to this case, starting in May 2016 and continuing for approximately two years, Giovanni Coria was involved in the illicit distribution of methamphetamine. Mr. Quiros learned of his son's activities and tried to convince his son to reject any involvement with drugs. However, after failing to convince his son otherwise, Mr. Quiros believed at the time that it was in his son's best interests that he observe his son's involvement to keep his son out of trouble and from doing something stupid. Mr. Quirós's plan was ill-conceived. Mr. Quirós's attempt to help watch over his son led to not one family member being involved, but two. It also caused Mr. Quiros to unknowingly gamble and lose everything

he has – his family. In order to try to keep his son from the negative consequences of his son's poor decisions, Mr. Quiros made an even worse decision.

On or about May 19, 2016, Mr. Coria arranged a sale of 55 grams of methamphetamine for $600.00 to a third party and directed Mr. Quiros to accompany him to the sale. On or about May 17, 2018, Mr. Coria arranged to sell approximately 0.25 pounds of methamphetamine for $900.00 to a third party. He provided Mr. Quiros with directions to procure and then deliver the drugs and receive payment on his behalf. In the relevant time frame, law enforcement investigated numerous individuals in relation to a separate major drug conspiracy, discovered Mr. Coria's involvement therein, and through him, found Mr. Quirós's involvement.

Law enforcement arrested Mr. Quiros on September 15, 2021, and the grand jury returned an indictment on or about August 24, 2021.

Mr. Quiros entered his guilty plea on or about August 18, 2022. In his plea agreement, Mr. Quiros accepted responsibility in the trafficking of $1500.00 of methamphetamine described herein. He does not have any other link to the other defendants involved in these related drug cases other than through Mr. Coria.

This matter is set for a sentencing hearing on December 8, 2022, at 2:30 p.m.

**III. OBJECTIONS TO THE PRESENTENCE INVESTIGATION REPORT**

Mr. Quiros has no objections to, or unresolved issues with, the Presentence Investigation Report authored by U.S. Probation Department.

**IV. SENTENCING GUIDELINES CALCULATION**

Pursuant to the United States Sentencing Guidelines ("U.S.S.G." or the "Guidelines"), which are advisory after the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005), Mr. Quirós's total offense level should be calculated as 27. This total offense level is reached by starting

with a base offense level of 30 based on the aggregate quantity of methamphetamine.  *See* U.S.S.G. § 2D1.1(c)(5).  Mr. Quirós's offense level is then decreased by three levels for his acceptance of responsibility.  *See* U.S.S.G. §§ 3E1.1(a) and (b).  Mr. Quirós's criminal history score is seven and his criminal history category is IV.  *See* Presentence Report ("PSR"), ¶ 34.  Therefore, Mr. Quirós's total offense level of 27 indexed with a Criminal History Category IV yields an advisory guideline range of 100-125 months. *Id.,* ¶¶ 12-24; *see also* Addendum to the PSR - Sentencing Recommendation. However, the maximum penalty under the statute of conviction that Mr. Quiros faces, 60 months, lies below the advisory Guidelines range. PSR, ¶ 3. This Court must only consider, but is not bound by, this advisory guideline range.  *See United States v. Hammons,* 558 F.3d 1100 (9th Cir. 2009).

## VI. SENTENCING RECOMMENDATION

Mr. Quiros respectfully recommends that the Court sentence him to a 24-month split sentence with a period of custody of 12 months followed by a period of home detention for 12 months. The split sentence would be followed by a 3-year term of supervised release. Mr. Quiros further submits that such a sentence is an appropriate resolution to his case in consideration of variance for Mr. Quiros. The recommended sentence is also sufficient and not greater than necessary to comply with the directives of 18 U.S.C. § 3553(a), namely: the nature and circumstances of the offense; Mr. Quirós's history and characteristics; the need for the sentence imposed to reflect the seriousness of the offense, and to afford adequate deterrence. The significant and life altering collateral consequences of Mr. Quirós's actions militate in favor of the recommended sentence.

**A. The Nature and Circumstances of the Offense, as well as Mr. Quirós's History and Characteristics, Support the Recommended Sentence**

Under 18 U.S.C. § 3553(a)(1), "the court, in determining the particular sentence to be imposed, shall consider the nature and circumstances of the offense and the history and characteristics of the defendant." These two factors support the recommended sentence.

### 1. Nature and Circumstances of the Offense

The actions in this case are simple, but the motivations behind the actions are complex and difficult. Mr. Quirós's son, Giovanni Coria convinced himself that he needed and wanted to sell drugs. His father learned of his son's plan and tried to dissuade him of it. He told his son about his drug use, and his previous involvement with drugs and the sale of drugs. He told his son that it was not worth the money; it was not worth the risk. But Giovanni would not listen. Mr. Quiros decided to watch over his son. Mr. Quirós decided that if his son was going to sell drugs that Mr. Quiros needed to keep Giovanni from doing something stupid. In the end, both Mr. Quiros and Mr. Coria would both acted stupidly and foolishly and will be punished for their crime.

Mr. Coria will do 70 months for his crime. Mr. Quiros was involved in the same conduct in completing two hand-to-hand transactions of methamphetamine for a total of $1500.00. Mr. Coria contacted the buyer, arranged the transfer location, the quantity of the drugs, and the sale price. He then directed Mr. Quiros to act as his intermediary, to accompany Mr. Coria to one transaction, and to once procure drugs from a location provided by Mr. Coria. Mr. Quiros obliged. Law enforcement discovered Mr. Quiros was involved while investigating numerous other individuals involved in the large-scale distribution of controlled substances, none of whom appear to have any direct link to Mr. Quiros. When confronted with his involvement, Mr. Quiros quickly accepted responsibility for his role in the offenses. Thus, Mr. Quirós's conduct, within the context of this larger drug distribution conspiracy, and compared to drug distribution offenses generally, should be viewed at the absolute nadir of the scale of seriousness of similar types of drug conspiracy offenses.

### 2. Mr. Quirós's History and Characteristics

#### a. Background

Mr. Quiros was born on March 18, 1969, in Michoacan, Mexico. His simple life in Mexico was turned upside down as he watched his family passed away around him. Both of his sisters passed away when Mr. Quiros was young and two of his brothers were killed in a robbery. Mr. Quirós's parents also

died before Mr. Quiros turned 20 years old. Without a real support structure to help him, Mr. Quiros left Mexico for the United States where he has lived ever since. Mr. Quiros remains a Mexican citizen with no legal status in the United States. Mr. Quiros has two remaining brothers who live in Mexico, but they not especially close. Mr. Quiros has not visited Mexico or seen them since his parents' passing.

In 1991, Mr. Quiros met and fell in love with Bertha Lopez. Mr. Quiros and Ms. Lopez, although not legally married, regard each other as husband and wife, and have two adult children together, Giovanni and Ivan Coria. Although Mr. Quiros has limited formal education and vocational training, he was able to complete an eighth-grade education in Mexico and has held jobs in construction, auto maintenance, horse care, and janitorial work.

Mr. Quiros has a criminal history. He was involved with drugs previously many years ago. Mr. Quiros suffered a drug possession conviction in 1994 and then two other drug convictions while being under the influence of drugs in 2007 and 2009. Mr. Quiros suffered a final conviction in 2014. He was able to learn from his mistakes and break free from his drug use. He thought he was done with drugs forever; until the unfortunate circumstances of this case arose.

However, even with the difficult childhood, lack of meaningful job advancement, and a prior drug addiction, Mr. Quiros was able to help raise a wonderful family. His family are close, and they love and support each other.

Mr. Quirós's actions have life changing dire consequences which will shatter his world and the worlds of the people he loves most. Mr. Quirós's family will be torn apart and will never be the same. After he serves his sentence, Mr. Quiros will be deported to Mexico. His wife, their children, and extended families cannot follow. Their lives are here in the United States. Mr. Quiros has limited connection with Mexico and no job prospects there. He will be alone and again without the support network that caused him to leave Mexico in the first place.

Mr. Quiros is a good man who made a mistake. He will pay for the mistake for the rest of his life. Mr. Quirós's niece put his nature and character in perspective:

> …[M]y uncle is a respectable man. He has always taken care of my aunt and my grandma. He provides for them. My grandma is diabetic and takes her to her hospital appointments. My uncle is always there to help with those things. He has been someone I look up to and when I get married, I want my future husband to have some of my uncle's qualities.

Declaration of Edwin Prather in support of Luis Quiros' Sentencing Memorandum and Request for a Downward Variance ("Prather Decl.), ¶ 2, Exh. A (Letter from Jennifer Valencia).

Mr. Quirós's common law wife, Ms. Lopez, described the hardships that the family will endure after Mr. Quiros is punished in this matter:

> We have been together for 31 years. Thirty years without going to Mexico. Our children are from here. And now our little granddaughter is going to be without her father (Giovanni Coria) and grandfather (Luis Quiros). [My husband] is the greatest support for our home because he has also helped me take care of my mother for almost 17 years now. My mother and I don't know what we are going to do when we are left alone. That is why I make an appeal [to the Court] so I can help him and give him the program so that he can stay longer. [My husband] has been a good father, even though one might think otherwise, children do not always do what one wants. Now he is the best grandfather that girl can have we have always been together taking care of our family now I don't know what to do.

Prather Decl., ¶ 3, Exh. B ("Letter from Bertha Lopez").

The nature and circumstances of the offense, as well as Mr. Quirós's history supports a 24-month split sentence. As a result of his conviction and sentence on the charges before this Court, Mr. Quiros will suffer adverse immigration-related consequences, including deportation and removal from the United States as well as permanent denial of admissibility to the United States in the future. Mr. Quiros will be separated from his common law wife and his children. He will be sent to Mexico, a country he has not lived in for more than thirty years, with no job prospects and few familial connections. A split sentence is the appropriate outcome for Mr. Quiros in this matter.

///

///

**B. The Recommended Sentence Meets the Directives of 18 U.S.C. § 3553(a)(2)**

18 U.S.C. § 3553(a)(2) directs the Court to consider "the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence, and to protect the public from further crimes." The recommended sentence meets these directives.

    **1. The Recommended Sentence Reflects the Seriousness of the Offense, Promotes Respect for the Law and Provides Just Punishment for the Offense**

While all violations of federal law are to be taken seriously, there can be no doubt that for certain offenses, the Court may consider certain types of crimes to be more serious than others. While a conspiracy to distribute drugs is significant, the United States Sentencing Commission has noted the seriousness of the offense may be lessened, for example, if the crime was victimless and was not violent. *See* 28 U.S.C. § 994(j) (prison is generally inappropriate in "cases in which the defendant is a first offender who has not been convicted of a crime of violence or an otherwise serious offense," while some term of imprisonment is generally appropriate for "a person convicted of a crime of violence that results in serious bodily injury").

As discussed previously, both within the context of the overarching drug distribution conspiracy as well as within the context of the two transactions Mr. Quiros actually participated in, Mr. Quirós's conduct is on the lower end of the spectrum of seriousness for drug distribution offenses.

Additionally, this conviction and the collateral consequence of his removal from the United States will punish Mr. Quiros far more severely than could any subsequent term of incarceration or period of supervision. Because Mr. Quiros faces removal and deportation, he will be sent to a country he has not seen in over 30 years, with no job prospects, and separated from his family. Mr. Quiros will never be able to return to the United States. Because the ultimate punishment Mr. Quiros will face as a

result of his conviction far exceeds any custodial term the Court could impose, the Court need not add to that punishment.

Nonetheless, Mr. Quiros recognizes that he has committed a wrong. He committed a crime and takes responsibility for his actions. The recommended sentence of a 24-month split sentence accounts for seriousness of the offense, promotes respect for the law, and provides just punishment. The split sentence will punish Mr. Quiros, but at the same time allow him to prepare for his eventual removal and spend what will likely be his last days with his family. On balance, it is an appropriate punishment in this matter.

### 2. The Recommended Sentence Affords Adequate Deterrence

Empirical evidence is unanimous that no relationship exists between sentence length and general or specific deterrence, regardless of the crime type. *See* Andrew von Hirsch, *et al.*, *Criminal Deterrence and Sentence Severity: An Analysis of Recent Research* (1999) (concluding that "correlations between sentence severity and crime rates . . . were not sufficient to achieve statistical significance," and that "the studies reviewed do not provide a basis for inferring that increasing the severity of sentences generally is capable of enhancing deterrent effects.").

Here, as previously stated Mr. Quiros previously suffered a couple of state court convictions which resulted in a couple of short sentences in county jail. These sentences were not over one year and resulted in just a couple of months of actual incarceration time. In this case, a conviction will provide the ultimate deterrence, due to Mr. Quiros' impending deportation. If the Court imposes a split sentence, a deterrent message will be sent that anyone without legal status in the United States who commits the offense to which Mr. Quiros is pleading will be permanently removed from the United States, separated from their family, and denied meaningful career paths or job opportunities. Similarly, once deported,

Mr. Quiros will no longer be able to cause any harm or commit any crime contrary to the interests of the United States, and thus he will be specifically deterred from future offenses.

## VIII. CONCLUSION

For the foregoing reasons, the Court should sentence Mr. Quiros to a 24-month split sentence with a period of custody of 12 months followed by a period of home detention for 12 months. The split sentence would be followed by a 3-year term of supervised release. No greater sentence could possibly enhance the existing punishment Mr. Quiros will face as a consequence of his actions. The sentence also fulfills Congress' other policy objectives aimed specifically at sentencing courts embodied in 18 U.S.C. § 3553(a). recommended sentence is sufficient but not greater than necessary to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence, and to protect the public from further crimes.

Dated: December 1, 2022                              Respectfully submitted,

_____/s/_____
EDWIN PRATHER
PRATHER LAW OFFICES
Attorneys for Defendant LUIS QUIROS